IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CR No.: 3:11-246-JFA |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | AND ORDER |
| GUADALBERTO MORALES-SALAZAR ) | |
| _____ ) | |

This matter is before the court on the defendant's *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 688). He contends that his immediate release is called for, relying in part on the threat posed by the ongoing COVID-19 pandemic, coupled with his existing medical conditions. With commendable candor, the government concedes that the defendant has demonstrated an extraordinary and compelling reason for his release, but nevertheless argues that his release is not appropriate at this time as a result of the statutory sentencing factors under 18 U.S.C. § 3553(a).

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

PROCEDURAL HISTORY

In January 2012, the defendant was named in 11 counts of a multi-count Indictment charging violations of narcotics laws and related offenses. Ultimately, the defendant pleaded guilty pursuant to a written Plea Agreement (ECF No. 317) to several charges:

1

Count 1:     Conspiracy to Distribute and to Distribute 1,000 Kilograms or More of Marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846;

Count 7:     Possession of a Firearm in Furtherance of a Drug Trafficking Crime, Aiding and Abetting, in violation of 18 U.S.C. §§ 924(c) and 2; and

Count 11:    Conspiracy to Launder Drug Proceeds, in violation of 18 U.S.C. § 1956(h).

The Presentence Report (PSR) (ECF No. 564) prepared by the United States Probation Office determined that the defendant's total offense level was 39 and his criminal history category was I. This resulted in a Guideline sentencing range of 262 to 327 months for Counts 1 and 11. Additionally, there was there was a mandatory 60-month consecutive sentence to all other sentences based on the firearms charge in Count 7.

At sentencing, this court granted the government's motion for a downward departure pursuant to United States Sentencing Guideline (USSG) § 5K1.1 and imposed a sentence of 252 months incarceration, consisting of 192 months on the two conspiracy charges, to run concurrently, and 60 months consecutive on the firearms charge.

The defendant did not appeal his conviction or sentence. Thereafter, pursuant to USSG Amendment 782, the court further reduced the defendant's sentence to 211 months. The defendant is currently scheduled for release in January 2026. Accordingly, he has approximately 48 months remaining on his sentence.

STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals are to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the

> factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836

4

F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether it will grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

*Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a

5

request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See United States v. Muhammad*, __ F.4th __, 2021 WL 4888393, at *3 (4th Cir. Oct. 20, 2021).

As it appears to this court that the defendant has fully exhausted his administrative remedies, the court will proceed to review the matter on the merits.

## DISCUSSION

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his or her medical conditions render them particularly susceptible to severe illness or death should he or she contract the virus. *See United States v. Youngblood*, No. 20-7836, 2021 WL 4167105, at *2 (4th Cir. Sept. 14, 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

6

*The Defendant's Motion for Compassionate Release*

In his motion (ECF No. 688), the defendant points out that his medical records reflect several medical issues. He apparently suffers from an allergy to sulfur antibiotics; he has a history of hyperlipidemia (high cholesterol), and he is pre-diabetic. Moreover, he is overweight and has a history of heavy smoking.

In his submission to the Bureau of Prisons (BOP), the defendant also suggested that he was needed as a caretaker for his aging mother in Mexico who had to relocate due to a natural disaster. Although not pointed out by the government, this court notes that the PSR prepared in 2013 reveals that the defendant has a brother and sister, both of whom reside in Mexico. No explanation is given as to why these siblings could not care for their mother. The court must reject this ground for relief as it lacks merit.

Regarding the defendant's medical condition, however, as noted above, the government concedes that the defendant's history of heavy smoking, standing alone, coupled with the ongoing COVID-19 pandemic, constitutes an extraordinary and compelling reason for his release.

However, the court's inquiry does not end here. Under Fourth Circuit guidance, this court must now make an individualized assessment of the defendant's case, with specific attention to the factors under 18 U.S.C. § 3553(a), and also with particular review of the defendant's post-sentencing conduct while incarcerated.

Taking the § 3553(a) factors in order, the court finds as follows:

1. *Nature and Circumstances of the Offense*. The severity of the offenses at issue in this case cannot be overstated. The defendant came to the United States as an illegal alien. He quickly became a leader and organizer of a major controlled substance conspiracy that spanned the Southeastern portion of the United States from Texas to South Carolina. His organization transported thousands of kilograms of marijuana in this effort. In his capacity as an organizer or leader, the defendant oversaw shipments of marijuana to South Carolina, rented warehouses and stash houses using drug proceeds, operated stash houses, and illegally possessed firearms. He was held accountable for 6,684.488 kilograms of marijuana, 12.856 kilograms of cocaine, and 3,922 Ecstasy pills. These controlled substances translated to a total marijuana equivalent of 9,745.938 kilograms.

In addition to being an organizer and leader of this illegal operation, the defendant possessed firearms in furtherance of the drug trafficking crimes, and also conspired to launder drug proceeds. At sentencing, the defendant received Guideline enhancements for maintaining a stash house, using a minor to engage in drug activity, and possessing a firearm during and in relation to the drug activity. At one point, a search of the stash houses maintained by the defendant resulted in the seizure of nearly $1 million in cash.

The defendant has already received two reductions in his lengthy sentence, one due to the government's motion for a downward departure and the other due to a change in the Guidelines (Amendment 782) that was made retroactive.

2. *History and Characteristics of the Defendant*. The defendant's criminal history includes several misdemeanor convictions in the United States, including unlawful carrying

of a weapon, two counts of driving without a license, and two counts of operating an uninsured motor vehicle, as well as other traffic violations. The defendant is currently 40 years old, single, with no children. According to the PSR, he has been involved in a long-term relationship with his co-defendant, Lucila Martinez-Vivanco. He illegally entered the United States in approximately 2002 and has returned to Mexico on four occasions. He completed the 10th grade in Mexico.

*Post-Sentencing Conduct*

While incarcerated, the defendant has obtained his GED and has attended vocational courses in drug education, business applications, and has worked at a variety of jobs, primarily in the BOP food services area. This court has not been made aware of any disciplinary infractions while incarcerated.

3.  *Seriousness of the Crimes*. As noted herein, the court regards the defendant's crimes as very serious and are fully supportive of a significant sentence.

4.  *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5.  *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6.  *Whether the Sentence Protects the Public from Future Crimes of the Defendant*. The court finds that a significant sentence is necessary to protect the public from future

crimes of the defendant.  The court views this as an important factor to be addressed in considering the present motion. This is perhaps one of the most important factors counseling against the defendant's immediate release.

7. *Need to Avoid Unwarranted Disparity*.  This court has carefully considered the sentences imposed on the co-defendants in this case at the outset, together with actions taken by this court on similar motions for compassionate release filed by co-defendants. The sentence imposed on the defendant in this case is entirely consistent with the sentences imposed on similarly situation co-defendants.

## CONCLUSION

For the foregoing reasons, the court determines that, even assuming the defendant has demonstrated an extraordinary and compelling reason for his release due to his medical conditions, his release at this time is not appropriate in light of this court's individualized assessment of the § 3553(a) factors, including the defendant's post-sentencing conduct.  The defendant's motion for compassionate release is respectfully denied.[1] (ECF No. 688).

IT IS SO ORDERED.

December 22, 2021  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge

---

[1] To the extent that the defendant seeks to have this court direct the BOP to place the defendant in home confinement, this court is without authority to do so.  The discretion to release a prisoner to home confinement lies solely with the Attorney General. See 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g).  The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this.  See CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")