IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.:  3:11-246-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| GUADALBERTO MORALES-SALAZAR | ) | |
| _____ | ) | |

This matter is before the court on the defendant's second *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 807).  The defendant contends that he is suffering from various degenerative disorders of the eye and that the Bureau of Prisons (BOP) has failed to provide any meaningful relief or treatment.  He asks this court to grant him compassionate release and resentence him to time served.  The defendant is scheduled to be released from the BOP on January 1, 2026.

The government opposes the defendant's motion, stating that even if the defendant's medical conditions rose to the level of extraordinary and compelling to warrant a reduction, the § 3553(a) factors weigh heavily against his release.  The defendant replied thereto.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties.  For the reasons which follow, the defendant's motion is respectfully denied.

## PROCEDURAL HISTORY

In January 2012, the defendant was named in 11 counts of a multi-count Indictment charging violations of narcotics laws and related offenses. Ultimately, the defendant pleaded guilty pursuant to a written Plea Agreement (ECF No. 317) to the following charges:

Count 1:     Conspiracy to Distribute and to Distribute 1,000 Kilograms or More of Marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846;

Count 7:     Possession of a Firearm in Furtherance of a Drug Trafficking Crime, Aiding and Abetting, in violation of 18 U.S.C. §§ 924(c) and 2; and

Count 11:     Conspiracy to Launder Drug Proceeds, in violation of 18 U.S.C. § 1956(h).

The Presentence Report (PSR) (ECF No. 564) prepared by the United States Probation Office determined that the defendant's total offense level was 39 and his criminal history category was I. This resulted in a Guideline sentencing range of 262 to 327 months for Counts 1 and 11. Additionally, there was a mandatory 60-month consecutive sentence to all other sentences based on the firearms charge in Count 7.

At sentencing, this court granted the government's motion for a downward departure pursuant to United States Sentencing Guideline (U.S.S.G.) § 5K1.1 and imposed a sentence of 252 months incarceration, consisting of 192 months on the two conspiracy charges, to run concurrently, and 60 months consecutive on the firearms charge.

The defendant did not appeal his conviction or sentence. Thereafter, pursuant to U.S.S.G. Amendment 782, the court further reduced the defendant's sentence to 211 months.

2

STANDARD OF REVIEW

Courts may not modify a sentence once imposed with few exceptions. 18 U.S.C. § 3582(c). One exception is compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act. To grant a compassionate release motion under § 3582(c)(1)(A)(i), the district court must conduct a two-step analysis. *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024). First, the court must find "extraordinary and compelling reasons" warranting a sentence reduction. *United States v. Hargrove*, 30 F.4th 189, 194–95 (4th Cir. 2022). After a district court finds that an "extraordinary and compelling" reason for sentence modification exists, it must then evaluate the relevant § 3553(a) factors. *Id*. at 195. The defendant bears the burden to establish that he or she is eligible for a sentence reduction under § 3582. *Centeno-Morales*, 90 F.4th at 279.

The court must also determine that such a reduction would be consistent with "applicable policy statements issued by the Sentencing Commission." *United States v. Davis*, 99 F.4th 647, 654 (4th Cir. 2024). Relevant here, an amended Sentencing Guidelines policy statement went into effect in November 2023 and provides criteria for determining the existence of extraordinary and compelling reasons for release. Generally, the list of circumstances qualifying as extraordinary and compelling falls into several categories: (1) the defendant's medical circumstances; (2) the defendant's age; (3) the defendant's family circumstances; (4) whether the defendant was the victim of certain abuse while in custody; (5) any other circumstances or combination of circumstances that, when considered by

themselves or together with any of the preceding categories, are similar in gravity; and (6) an unusually long sentence if the defendant meets certain conditions. U.S.S.G. § 1B1.13(b).

*Exhaustion of Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on his behalf. The defendant may file a motion with the court: (1) after fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021), 18 U.S.C. § 3582(c)(1)(A).

The government concedes that the defendant has exhausted his administrative remedies, thus the court will proceed to review the matters on the merits. *See United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021).

DISCUSSION

The Sentencing Commission has issued a policy statement, amended in November 2023, that governs reduction of sentences under § 3582(c)(1)(A). The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(b)(1)(A). Second, the standard is met if the defendant is: (I) suffering

4

from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(b)(1)(B). Third, extraordinary and compelling reasons exist when the defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in heath or death." U.S.S.G. § 1B1.13, cmt. n.1(b)(1)(C).

## *I. Medical Condition*

In this motion for compassionate release[1] (ECF No. 807), the defendant states that he is suffering from various eye disorders which are degenerative and causing worsening vision and potentially resulting in blindness if left untreated. He also complains that the BOP has failed to provide any meaningful relief or treatment options.

In particular, the defendant states that he has been diagnosed with progressive peripheral pterygium OU (both eyes) and Symblepharon OD (right eye). He describes it as

---

[1] In his first motion for compassionate release filed on September 8, 2020, the defendant claimed he suffered from an allergy to sulfur antibiotics; he had a history of hyperlipidemia (high cholesterol); he was pre-diabetic and overweight; and he had a history of heavy smoking. He asserted that all of these conditions would increase his risk of serious illness if he were to contract COVID-19. This court found that even assuming the defendant had demonstrated an extraordinary and compelling reason for his release due to these medical conditions, his release was not appropriate in light of this court's assessment of the § 3553(a) factors (ECF No. 770). The defendant did not raise his current eye disorder in his first motion, nor does he raise his earlier health conditions in the present, second motion for compassionate release.

a raised, fleshy triangular shaped growth of the tissue on the surface of the white part of the eye (conjunctiva). The defendant states that this eye disorder usually grows very slowly over many years with common symptoms including redness and irritation. The defendant contends that he suffers from the extreme variety of the condition which changes visual acuity by distorting the cornea and causing daily redness, irritation, and impaired vision. He asserts that despite many years of complaining about his eye conditions, the BOP has failed to provide medical relief and so his vision is rapidly deteriorating.

The defendant states that he was told he would have to wait until released from prison for surgical intervention. He states that he has been seen by outside eye specialists and was provided lubricant eye drops that worked for about 2 months and then were ineffective. In February 2023, he consulted with two physicians outside of the BOP who indicated that surgery was not recommended at that time due to a significant risk to his right eye. The defendant states that the BOP health services informed him that the BOP would be unlikely to agree to surgical intervention due to risk to the defendant. He then complains that the BOP is placing liability concerns over proper needed medical care for the defendant.

The government argues that even if the defendant's medical conditions relating to his eye rose to the level of extraordinary and compelling reasons for consideration of compassionate release (which the government says such conditions do not), the § 3553(a) factors weigh heavily against his release. The government states that while the defendant's medical records confirm a diagnosis of bilateral pterygium and symblepharon, they further

6

reflect the extensive lengths BOP has gone to treat his condition following his initial complaint. Treatments which include regular eye exams, glasses, prescriptions, and numerous trips to an offsite ophthalmologist to evaluate, monitor, and treat his eye conditions.

The government argues that the defendant has not shown that these conditions substantially diminish his ability to provide self-care and that there is no indication in any of his medical records that suggest he is unable to care for himself while serving his sentence. The defendant's medical records show that on numerous occasions, he denied mobility problems, use of ambulatory aid, a history of falls, and any mobility concerns.

Finally, the government asserts that even assuming that the defendant's conditions require long-term or specialized medical care, the defendant is currently receiving medical care commensurate with his conditions.  Following his diagnosis with bilateral pterygium, the defendant received regular eye exams, was prescribed eye drops to treat his symptoms, and received treatment from an offsite Ophthalmologist.  Although the defendant argues that surgical intervention is necessary to treat his condition, however, that is contrary to the recommendations of both of his treating physicians, including the offsite ophthalmologist.

This court has carefully reviewed the record and finds that while the defendant's eye disorder is serious, he has failed to meet his burden to establish that his ocular medical conditions present extraordinary and compelling reasons to warrant his early release.  As such, there is no need for the court discuss the § 3553(a) factors.

7

CONCLUSION

For the foregoing reasons, the court determines that the defendant has not presented an extraordinary and compelling reason for a reduced sentence. The defendant's motion for compassionate release is respectfully denied (ECF No. 807).

IT IS SO ORDERED.

March 31, 2025
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge

8